IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 18-cv-00108-PAB-KLM

ARCTIC ENERGY SERVICES, LLC,

    Plaintiff,

v.

DUSTIN NEAL,
DUSTIN AILPORT, and
WATER WAY SOLUTIONS, LLC,

    Defendants.

## ORDER

This matter is before the Court on Plaintiff's Motion for a Preliminary Injunction Against Defendants Dustin Ailport and Water Way Solutions, LLC [Docket No. 57]. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

Plaintiff Arctic Energy Services, LLC is a Delaware limited liability company that provides various services to oil and gas companies, including flow back, production well testing, water transfer services, and equipment rentals. Docket No. 51 at 2, ¶ 5. Defendants Dustin Ailport and Dustin Neal are former employees of plaintiff who now work for defendant Water Way Solutions, LLC, a Wyoming limited liability company and alleged competitor of plaintiff in the oil and gas industry. *Id.* at 2-3, ¶¶ 6-8. Plaintiff filed this lawsuit on January 12, 2018, asserting claims for misappropriation of trade secrets under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, and the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. § 7-74-101 *et seq.*; civil theft;

conversion; breach of the duty of loyalty; aiding and abetting breaches of fiduciary duties; violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*; intentional interference with prospective contractual relations; conspiracy; and preliminary and permanent injunctive relief. Docket No. 1. On January 19, 2018, plaintiff moved for a preliminary injunction based on its misappropriation of trade secrets claims. Docket No. 11. The Court scheduled a full-day hearing on the motion for February 20, 2018. Docket No. 28. On February 15, 2018, plaintiff filed an exhibit list containing four exhibits, entitled "Employee Confidentiality and Unfair Competition Agreement," "Employment Agreement," "Employee Non-Disclosure Agreement," and "Confidentiality Agreement" (Exhibits 10-13). Docket No. 37-1 at 2. Defendants filed an objection to these exhibits on February 16, 2018, asserting that the exhibits had not previously been disclosed. Docket No. 39 at 1-2, ¶ 2. On February 16, 2018, the Court ordered plaintiff to produce copies of the exhibits to defendants and the Court by the end of the day. Docket No. 41. The Court otherwise overruled defendants' objection. *Id.*

During the February 20 preliminary injunction hearing, plaintiff introduced Exhibits 10-12 as evidence that it had taken steps to prevent the disclosure of confidential information. Docket No. 44. Plaintiff stated that it was "not trying to enforce" the employment agreements or assert claims for breach of contract. At the end of the hearing, the Court found that all four of the preliminary injunction factors weighed in favor of plaintiff on its misappropriation of trade secrets claims. On February 22, 2018, the Court entered a written order preliminarily enjoining defendants from "deleting, destroying, erasing, or otherwise making unavailable . . . any business

2

information of plaintiff"; "using, disclosing, or otherwise making publicly available for any purpose confidential information . . . obtained as a result of Mr. Ailport's and Mr. Neal's employment with plaintiff"; or "soliciting any current client of plaintiff through the use of [plaintiff's] confidential information."  Docket No. 45 at 8-9.

On March 14, 2018, plaintiff filed an amended complaint adding claims for breach of contract against defendant Dustin Ailport based on the employment agreements introduced at the February 20, 2018 preliminary injunction hearing.  Docket No. 51.  On March 28, 2018, plaintiff filed a second motion for a preliminary injunction predicated on the newly-asserted breach of contract claims.  Docket No. 57.  In the motion, plaintiff states that the preliminary injunction entered on February 22, 2018 "does not go far enough" and that plaintiff is entitled, pursuant to the terms of defendant Ailport's employment agreements, to an order enjoining defendants Ailport and Water Way from "(i) competing with Arctic, (ii) soliciting any Arctic customer, (iii) starting any new jobs with any former or current Arctic customer, and (iv) soliciting any Arctic employee."  *Id.* at 2, 16.  To explain why it did not assert its breach of contract claims earlier, plaintiff states that "[d]efendants and their co-conspirators concealed the Ailport Agreements from Arctic," such that the agreements were only discovered "shortly prior to the previous hearing held by this Court on February 20, 2018."  Docket No. 57 at 2.  Plaintiff also asserts that "certain other pertinent Dustin Ailport employment records" were not discovered until March 18, 2018.  *Id.*[1]  Defendants Ailport and Water Way filed

---

[1] Although these additional employment records, which consist of drug-testing consent/acknowledgment forms, a criminal history consent form, and a W-4 form, *see* Docket Nos. 57-4, 57-5, 57-6, 57-7, may be relevant to the issue of whether the employment agreements were supported by consideration, *see* Docket No. 85 at 4-5,

3

a response to plaintiff's motion on April 19, 2018, Docket No. 70, to which plaintiff replied on May 9, 2018. Docket No. 80. None of the briefs address the fact that, before the preliminary injunction hearing on February 20, 2018, defendants objected to the introduction of the employment agreements on the ground that they had not previously been disclosed. On May 21, 2018, the Court ordered the parties to file supplemental briefs addressing: (1) the facts and circumstances surrounding defendants' alleged concealment of the employment agreements; (2) the date plaintiff first became aware of the employment agreements; (3) the date plaintiff first obtained copies of the employment agreements; (4) the means by which plaintiff obtained copies of the employment agreements; (5) the reasons why plaintiff did not discover certain other employment records pertaining to defendant Ailport until March 18, 2018; and (6) any other facts or information relevant to plaintiff's ability to assert its breach of contract claims in the original complaint. Docket No. 83 at 2.

In its supplemental brief, filed on May 29, 2018, plaintiff alleges that Shane and Jill Ailport – the key executives and 100% owners of Arctic Oilfield Services LLC ("Old Arctic") – and HR Manager James Paddison deliberately concealed defendant Ailport's employment agreements from Prospect Capital Corporation, Arctic's new majority owner. Docket No. 85 at 2-3. Specifically, plaintiff asserts that Shane and Jill Ailport entered into a Contribution Agreement with plaintiff on May 5, 2014, in which they represented that they had provided plaintiff with a "complete and correct list of . . . all

---

they are not the basis for plaintiff's breach of contract claims. Plaintiff does not argue that it could not have asserted its breach of contract claims before obtaining these additional records on March 18, 2018.

employment agreements . . . between [Arctic] and any of its past or current shareholders, owners, partners, members, directors, officers, or key management employees." *Id.* at 2. That list did not contain defendant Ailport's employment agreements. Plaintiff further avers that both James Paddison, who continued as Arctic's HR Manager after the 2014 merger, and Shane Ailport informed Arctic director David Belzer that defendant Ailport did not have any employment agreements. *Id.* at 3.[2] Plaintiff states that it relied on these representations until mid-December 2017, when, after learning "about Paddison's other efforts to conceal and misappropriate for Defendant Ailport's benefit . . . , [it] dispatched its new HR/Benefits Coordinator, Savannah Dela Vega . . . to search for any employment agreements entered into by Defendants Ailport or Neal." *Id*. at 4. Ms. Dela Vega allegedly discovered the employment agreements "in a file that had been kept in an old box in a storage room at Arctic's former Glenrock office" on January 31, 2018. *Id.* at 4. According to plaintiff, only certain pages of the employment agreements were initially transmitted to Arctic's new management due to an inadvertent scanning error. *Id.* at 4 n.3. By February 12, 2018, Arctic's new management had obtained complete copies of the employment agreements. *Id.* at 4.

Defendants' supplemental brief asserts that "Arctic has owned and controlled the records, documents, and equipment of former Arctic Oilfield Services, Inc. since on or before May 5, 2014." Docket No. 84 at 2. Defendants further state that Mr. Paddison's

---

[2]Plaintiff states that Mr. Paddison made this representation on or about November 14, 2017. Docket No. 85 at 3. Plaintiff does not provide a date or temporal context for Mr. Ailport's representation.

resignation from Arctic on December 11, 2017 "gave Arctic's agents and other employees full and unfettered access to the employment records . . . no later than December 12, 2017." *Id.* Finally, defendants contend that the amended complaint, filed by plaintiff in its New York lawsuit against Shane and Jill Ailport on February 9, 2018, demonstrates that Arctic "possessed the subject employment agreements prior to February 9, 2018." *Id.* at 3. The amended complaint, which is attached to defendants' supplemental response as Exhibit B, alleges, in relevant part, that Dustin Ailport entered into various employment agreements with Old Arctic on or about January 1, 2010. Docket No. 84-3 at 18, ¶ 83.

Based on the parties' supplemental filings, the Court finds that plaintiff has not shown good cause for failing to raise its breach of contract arguments at the February 20, 2018 preliminary injunction hearing. Even accepting plaintiff's timeline of events, plaintiff was aware of defendant Ailport's employment agreements by January 31, 2018 and had obtained complete copies of those agreements by February 12, 2018. Although plaintiff had already filed its complaint and preliminary injunction motion at that time, the full-day evidentiary hearing on plaintiff's motion was over a week away. Nothing prevented plaintiff from moving to continue the preliminary injunction hearing and to amend its complaint based on the newly-discovered employment agreements. As courts have indicated in similar contexts, "separate adjudications of piecemeal motions . . . are not favored under the Federal Rules of Civil Procedure." *Int'l Bus. Machs. Corp. v. Johnson*, 2009 WL 2356430, at *2 (S.D.N.Y. July 30, 2009) (quoting *Tilcon Minerals, Inc. v. Orange Rockland Utils., Inc.*, 851 F. Supp. 529, 531 (S.D.N.Y.

6

1994)); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). Instead, parties "ought to be held to the requirement that they present their strongest case for relief when the matter is first raised," *Int'l Bus. Machs. Corp.*, 2009 WL 2356430, at *2 (internal quotation marks and brackets omitted), and should not be permitted "to harass their adversaries and the courts with a barrage of successive motions for extraordinary, preliminary injunctive relief." *F.W. Kerr Chem. Co. v. Crandall Assoc., Inc.*, 815 F.2d 426, 429 (6th Cir. 1987). Plaintiff asserts that it "could not delay in bringing claims of trade secrets theft based on the information it had" at the time of the filing of its original complaint. Docket No. 85 at 5. But plaintiff's failure to consolidate its requests for injunctive relief has resulted in an unnecessary expenditure of the Court's and the parties' resources. Given that plaintiff's second motion for a preliminary injunction seeks substantially the same relief as plaintiff's first motion – namely, an order enjoining defendants from accepting business from plaintiff's customers, *compare* Docket No. 11-1 at 2 (requesting order enjoining defendants from "[a]ccepting any business from any Arctic customer that was a customer of Arctic's while Defendants Neal and Ailport were employed by Arctic, obtained by Defendants since their misappropriation of the Materials"), *with* Docket No. 61 at 2 (requesting order enjoining defendants from "[c]ompeting with Arctic," "[s]oliciting any Arctic customer," or "[s]tarting any new jobs with any former or current Arctic customer")[3] – plaintiff should

---

[3]Plaintiff narrowed the scope of its requested relief at the preliminary injunction hearing.

have made every effort to raise its breach of contract claims at the first preliminary injunction hearing. Plaintiff's failure to do so does not entitle it to a second bite at the apple. *See Int'l Bus. Machs. Corp.*, 2009 WL 2356430, at *2 (declining to "allow IBM to litigate [the] matter through piecemeal, seriatim motions requesting the same relief").

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for a Preliminary Injunction Against Defendants Dustin Ailport and Water Way Solutions, LLC [Docket No. 57] is **DENIED**.

DATED June 28, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge